IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | CRIMINAL NO. TDC-21-46 |
| | * | |
| REYNOLD BRANDON MASON, | * | **Filed Under Seal** |
| | * | |
| Defendant | * | |
| | * | |
| ******* | | |

### GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The United States of America, by and through its attorney, hereby submits the Government's Memorandum in Aid of Sentencing. Defendant Reynold Brandon Mason ("Mason") is scheduled to be sentenced on December 2, 2022, at 2:00 p.m. In October 2020, Mason—a convicted felon—was found in possession of a loaded firearm with an extended magazine, 13 pills of fentanyl, and $935 in U.S. Currency. He was arrested and charged in Prince George's County, Maryland and was released on bond pending further proceedings. While on bond, in January 2021, Mason sold fentanyl pills to co-defendant Basiru George, who provided the pills to Victim 1, who died as a result of Mason's fentanyl pills. For the reasons set forth below, the Government submits that a sentence of **204 months in prison, followed by 5 years of supervised release**, is a sentence sufficient but not greater than necessary to satisfy the goals of sentencing. The Government further requests that the Court enter a restitution order in the amount of $10,389 to Victim 1's estate and the order of forfeiture of the firearms and ammunition filed at ECF 105.

I.  **Background**

On November 17, 2021, the Defendant was charged in a four-count Superseding Indictment charging the defendant with possession with intent to distribute controlled substances,

possession of a firearm in furtherance of a drug trafficking crime, felon in possession of a firearm and ammunition, and distribution of controlled substances with death resulting.

On July 11, 2022, the Defendant pled guilty to a two-count Superseding Information charging him with felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)—for an incident in October 2020 (Count One)—and distribution of controlled substances, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C)—which resulted in the death of Victim 1 (Count Two).

Pursuant to a written plea agreement, the parties agreed that the base offense level for Count One is **22** because the offense involved a semiautomatic firearm that is capable of accepting a large capacity magazine and the Defendant committed the instant offense subsequent to sustaining one felony conviction of a controlled substance offense. The parties further agreed that a **4**-level enhancement applies because the defendant used or possessed the firearm in connection with another felony offense, namely drug trafficking.

As for Count Two, the parties agreed that the base offense level is **43** because the stipulated facts in the offense of conviction established that death resulted from the use of a controlled substance and the Defendant committed the offense after one or more prior conviction for a similar offense. The parties further agreed that a **2**-level enhancement applies because the Defendant maintained a premise for the purpose of distributing a controlled substance.

The Government did not oppose a **2**-level reduction for acceptance of responsibility, and the Government agreed to move for an additional **1**-level reduction in recognition of the Defendant's timely notification of his intention to enter a plea of guilty. The final offense level is

therefore **42**.[1]  The United States Probation Office ("Probation") agrees with this calculated offense level.  (PSR ¶¶ 24-53.)

The Government agrees with (and the Defendant has not objected to) Probation's calculation that the Defendant's criminal history score is **12** and his criminal history category is therefore **V**.  (PSR ¶ 68.)  For a final offense level of **42** and criminal history category **V**, the Guidelines prescribe a sentence of **360 months to life imprisonment**.  However, the statutory maximum penalty for Count One and Count Two totals **360 months**, which therefore is the adjusted guidelines calculation.

However, the plea agreement was entered into pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C).  Accordingly, the parties jointly agreed to recommend to the Court a sentence within the range of **144 months to 204 months of imprisonment**.  (Plea ¶ 9.)

## II.     Legal Standard

In *United States v. Green,* 436 F.3d 449 (4th Cir. 2006), the Fourth Circuit held that after *United States v. Booker,* 543 U.S. 220 (2005), which made the Sentencing Guidelines effectively advisory, the district court is commanded to fulfill congressionally established objectives for sentencing set out in 18 U.S.C. § 3553(a): promoting respect for the law; providing just punishment for the offense; affording adequate deterrence; protecting the public from further criminal activity of the defendant; providing the defendant training, medical care, and correctional treatment; and providing restitution to victims.  *See Green,* 436 F.3d at 455; *see also United States v. Moreland,* 437 F.3d 424, 432 (4th Cir. 2006).

Thus, in conducting a sentencing, district courts must (1) calculate the sentence range

---

[1] Count Two does not group with Count One because the counts involve separate acts that constitute different objectives, but because of the difference in offense levels, there is no increase to the Guidelines.

3

recommended by the Sentencing Guidelines; (2) determine whether a sentence within that range and within statutory limits serves the statutory sentencing factors set out in 18 U.S.C. § 3553(a) and, if not, select a sentence that does serve those factors; (3) implement mandatory statutory limitations; and (4) articulate the reasons for selecting the particular sentence, especially explaining why a sentence outside of the Sentencing Guidelines range better serves the relevant statutory sentencing purposes. *See Green,* 436 F.3d at 455-56; *Moreland,* 437 F.3d at 432. The explanation of a variant sentence must be tied to the factors set forth in § 3553(a) and must be accompanied by findings of fact as necessary. *See Green,* 436 F.3d at 455-56; *United States v. Perez-Pena,* 453 F.3d 236, 241 (4th Cir. 2006). The district court is given "some latitude," and "a degree of deference," to tailor a particular sentence to the circumstances. *Green,* 436 F.3d at 456-57; *Moreland,* 437 F.3d 433.

### III. Relevant Sentencing Considerations Under 18 U.S.C. § 3553(a)

The stipulated facts in the plea agreement set forth the serious nature of the offenses. On October 20, 2020, officers observed a photo posted to Mason's Instagram account. The photo depicted Mason wearing a purple hoodie inside what appeared to be a hotel room and holding a white backpack and a handgun with a red laser sight and an extended magazine. A few minutes later, law enforcement observed Mason exit a hotel room at the Quality Inn in Takoma Park, Maryland and enter the passenger seat of a blue Nissan Sentra. Law enforcement conducted a traffic stop of the vehicle in Hyattsville, Maryland. After being asked to exit the vehicle, Mason and the driver refused to comply and would not unlock the doors to the vehicle. Ultimately, the officers had to use a baton to break the passenger side windows of the vehicle and thereafter removed Mason and the driver from the vehicle to place them under arrest.

During a search of Mason, law enforcement recovered from his waistband a Sig Sauer P365 with a red laser sight and an extended magazine loaded with 10 rounds of 9mm ammunition, including one in the chamber. The firearm recovered from Mason's person matched the firearm pictured in the photograph taken in Mason's hotel room and posted by Mason to his Instagram account. Law enforcement also recovered 13 pills of fentanyl from Mason's right pocket and $935 from his left pocket.

A review of Mason's Instagram direct messages showed Mason coordinating the sales of drugs, including oxycodone and marijuana, on October 18 and 19, 2020. Mason also posted pictures to his Instagram account offering suspected oxycodone pills for sale, including on August 21, 2020, August 31, 2020, September 1, 2020, and September 8, 2020. Following his arrest and release on bond on October 22, 2020, Mason continued to post videos of drugs and firearms to his Instagram account. This included a posting on November 20, 2020, displaying and advertising prices and quantities of oxycodone pills or marijuana for sale. Mason also posted videos or photos displaying firearms on November 20, 2020 (showing a tan handgun in his left pocket, and a black handgun with an extended magazine in his waistband), on November 22, 2020 (holding a black handgun with an extended magazine), on January 14, 2021 (showing his face while he was holding two handguns with extended magazines), and on January 15, 2021 (showing his hand with a black handgun with an extended magazine on the table).

The defendant was arrested and released on bond in Prince George's County, Maryland.

Undeterred, while on bond, on January 5, 2021, Mason continued his drug dealing, which resulted in the tragic death of Victim 1. On January 5, 2021, Mason's co-defendant, Basiru Isaiah George, Jr. ("George") contacted Victim 1 and stated that he was attempting to locate drugs. Victim 1 told Geroge that he had $75 and that he wanted two pills. George then texted Mason and

asked to purchase four pills, which he referred to as "30s." George traveled to Mason, who was located in Mt. Rainier, and purchased seven pills from Mason. George gave some of the pills to Victim 1. Victim 1 was found dead by his father a little over an hour after George delivered the drugs. Victim 1 had only consumed one-half of the two-and-a-half pills George had procured for him.

Death resulting cases are some of the most serious offenses before this Court, and the seriousness of the offense is compounded by the fact that the Defendant caused Victim 1's death while on release awaiting trial on other fentanyl and gun-related charges. Indeed, the fentanyl pills the defendant possessed in October 2020 were also disguised as oxycodone 30 mg pills. And, even more alarmingly, the Defendant—a prolific fentanyl dealer—armed himself while engaging in drug dealing (and possessed numerous other firearms, as evidenced by his social media messages). The Defendant is a danger to the community, and a 204-month sentence requested by the Government addresses the seriousness of the Defendant's conduct and provides just punishment.

The current offenses are also not even remotely the Defendant's first brush with the law. The Defendant has six juvenile commitments, starting at age 14, all but one of which involved theft and burglary charges (and one destruction of property). In his adulthood, at age 17, the Defendant was convicted of his first of two gun convictions (not including the instant offense), for which he was sentenced to 3 years (all but 6 months suspended). The Defendant thereafter violated probation in 2017 and then had his mandatory release revoked in 2019. He was convicted, in 2017, of malicious destruction of property, and violated probation in *that* case as well (in 2019).

Also in 2017, the Defendant was convicted of his second firearms offense, and sentenced to 10 years (all but one year suspended, which was later amended to 3 years, all but 1 year suspended). The defendant remains on probation for this offense.

In 2019, the defendant was convicted of possession with intent to distribute marijuana, and remains on probation for this offense, as well. The defendant was released from custody in May 2020 and **just five months later**, committed one of the instant offenses—being a felon in possession of a firearm and ammunition. As a result of these convictions and repeated violations of probation (and pretrial release), the Defendant is a Criminal History category V.

The Defendant has shown time and time again that he must be incarcerated for a significant period in order to protect the public and deter him from continuing to commit crimes, including the extremely dangerous drug distribution and firearms offenses for which he has been previously convicted and stands convicted of before this Court. Moreover, as a result of the Defendant's repeated criminal conduct, Victim 1 has paid the ultimate price: death. As Victim 1's father eloquently describes in his Victim Impact Statement (ECF 96, filed under seal), Victim 1's father's life is now "filled with sleepless nights, racing thoughts, bad dreams, nightmares, unanswered questions, sadness and pain." Victim 1's loss is immeasurable, and it was at the hands of the Defendant, who had not yet learned his lesson.

A 204-month sentence accomplishes the purposes of sentencing.

## IV.    Restitution

Pursuant to the parties' plea agreement, the Defendant has agreed to the entry of a restitution judgment in the amount of $10,389.00 to Victim 1's estate, and the Government asks the Court to enter such restitution.

## V. <u>Conclusion</u>

For the foregoing reasons, and additional information that may be presented at the sentencing hearing, the Government respectfully submits that a sentence of **204 months in prison, followed by 5 years of supervised release**, is sufficient but not greater than necessary to meet the purposes of sentencing as enumerated in the § 3553(a) factors.

Respectfully submitted,

Erek L. Barron
United States Attorney

By:     /s/
Kelly O. Hayes
Assistant United States Attorney